| | |
|---|---|
| **CYRIL PETER JR.,** | |
| **Petitioner,** | |
| **v.** | **CIVIL NO. 16-2089 (PAD)** |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

**MEMORANDUM AND ORDER**

Delgado-Hernández, District Judge.

Petitioner Cyril Peter Jr. pled guilty to importation of at least 500 grams of cocaine into the customs territory of the United States in violation of 21 U.S.C. §§ 952 and 960(a)(1) and (b)(1)(B) (Docket Nos. 26 and 27 of Criminal No. 14-285). He was sentenced to 87 months of imprisonment, payment of a special monetary assessment, and supervised release (Docket Nos. 34 and 35 of Criminal No. 14-285). He unsuccessfully appealed the judgment (Docket Nos. 36 and 57 of Criminal No. 14-285), and now challenges the conviction and sentence pursuant to 28 U.S.C. § 2255.

To this end, before the court is petitioner's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Docket No. 1), a motion that he supplemented with a "Motion for Leave to Supplement and Amend a Supplemental Motion under Rule 15(c)" (Docket No. 6), which supplementation the court authorized (Docket No. 7). The government opposed the motion to vacate as supplemented (Docket No. 9), and petitioner replied (Docket No. 16). For the reasons discussed below, the petition to vacate or correct sentence lacks merit and must be DISMISSED.

# I.   <u>BACKGROUND</u>

On April 4, 2014, a Grand Jury returned a two-count indictment against petitioner for importation of at least 500 grams of cocaine into the customs territory of the United States in violation of 21 U.S.C. §§ 952 and 960(a)(1) & (b)(2)(B)(ii)(Count 1), and for possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii) (Count 2)(Docket No. 17 of Criminal. No. 14-285).   On June 20, 2014, petitioner pled guilty to Count One (Docket Nos. 26 and 27 of Crim. No. 14-285).

The terms of the Plea Agreement called for an adjusted offense level of 25 (Docket No. 27 of Criminal No. 14-285, p. 4).  The parties did not stipulate as to any Criminal History Category ("CHC") and agreed to recommend a sentence within the guideline range determined by the court for the adjusted offense level of 25.  <u>Id.</u>  The Plea Agreement indicated that in accord with Section 5G1.1(c)(2) of the Sentencing Guidelines, the potential guideline range for CHC-I was 60-71 months; for CHC-II was 60-78 months; and for CHC-III was 60-87 months (<u>Id.</u>, pp. 4,5).

On September 24, 2014, the court sentenced petitioner to a term of imprisonment of 87 months; a term of supervised release of 4 years; and a special monetary assessment of one hundred ($100.00) dollars (Docket No.  34 of Criminal No. 14-285).  Judgment was entered on that same day (Docket No. 35 of Criminal No. 14-285).

On October 10, 2014, petitioner appealed his sentence (Docket No. 34 of Criminal No. 14-285), raising the following arguments:

(1) "the appeal-waiver provision is not enforceable because the judge did not adequately explain its significance to him, because the judge settled on an adjusted-offense level different from the one the parties had agreed to in the plea agreement (23, rather than the bargained-for 25), and because holding him to that provision would work a miscarriage of justice." ; and

(2) "his sentence is either procedurally or substantively unreasonable, accusing the judge of not appreciating the full extent of his cooperation, not thinking about giving him a sentencing break because he was only a minor participant in the crime, not considering all of the relevant sentencing factors in 18 U.S.C. § 3553(a), and not offering sufficient reasons for the chosen sentence."

(Docket No. 57, p. 3 of Criminal No. 14-285). On January 28, 2016, the First Circuit affirmed the sentence (Docket No. 57 of Criminal No. 14-285). On June 13, 2016, petitioner filed a *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence and a supporting legal memorandum (Docket Nos. 1, 1-1). On June 28, 2016, he filed an amended motion (Docket No. 6). On August 1, 2016, the government opposed petitioner's motions (Docket No. 9). On October 20, 2016, petitioner replied (Docket No. 16).

## II.    <u>STANDARD OF REVIEW</u>

Pursuant to Section 2255, "[a] prisoner in custody under sentence of a court established by [an] Act of Congress . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "[T]he statute provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." <u>David</u> v. <u>United States</u>, 134 F.3d 470, 474 (1st Cir. 1998) (<u>citing</u> <u>Hill</u> v. <u>United States</u>, 368 U.S. 424, 426-27 (1962)). Claims that do not allege constitutional or jurisdictional errors are properly brought under Section 2255 only if the claimed error is a "fundamental defect which fundamentally results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." <u>Id.</u>

A motion under Section 2255 is not a substitute for a direct appeal. <u>See</u>, <u>Foster</u> v. <u>Chatman</u>, 136 S. Ct. 1737, 1758 (2016)(addressing topic). As a result, "as a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on

direct appeal." Id. (citations omitted). Moreover, "[c]ollateral relief in a § 2255 proceeding is generally unavailable if the petitioner has procedurally defaulted his claim by failing to raise the claim in a timely manner at trial or on direct appeal." Bucci v. United States, 662 F.3d 18, 27 (1st Cir. 2011) (quotation marks and citations omitted). If a Section 2255 petitioner does not raise a claim on direct appeal, that claim is barred from judicial review unless the petitioner can demonstrate both (1) cause for the procedural default, and (2) actual prejudice resulting from the error asserted. Id. (stating proposition)(citing United States v. Frady, 456 U.S. 152, 167-168 (1982)).

### III.    DISCUSSION

Petitioner moves to vacate his sentence alleging ineffective assistance of counsel (Docket No. 1, 1-1, Docket No. 6, and Docket No. 16). Initially, he alleged that his counsel was ineffective for the following reasons: (1) failure to object to the court's acceptance of his guilty plea without determining that the plea was entered knowingly, intelligently, and voluntarily (Docket Nos. 1 and 1-1, p. 2); (2) failure to object to the probation officer's premature disclosure of the Presentence Investigation Report ("PSR") (Docket Nos. 1 and 1-1, p. 3); (3) not objecting to the court's failure to verify that he had reviewed the PSR with counsel (id.); and (4) not objecting to the court's failure to state in open court the reason for the imposition of an 87 month sentence of imprisonment. Id. But in replying to the governments' opposition, besides modifying the third claim in support of his ineffective assistance of counsel contention, petitioner dismissed the first, second, and fourth claims in support thereof (Docket No. 16, p. 1). Consequently, those claims are considered withdrawn with prejudice.

A.  Ineffective Assistance of Counsel Standard

The standard for a claim of ineffective assistance of counsel is whether counsel''s conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  See, Strickland v. Washington, 466 U.S. 668, 688-689 (1984)(examining issue); Lema v. United States, 987 F.2d 48, 51(1st Cir. 1993)(same).  To succeed in a claim of ineffective assistance of counsel, Petitioner must establish both incompetence and prejudice.  He must demonstrate: (1) that counsel's representation fell below an objective standard of reasonableness, and (2) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  See, Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996)(analyzing formulation).

Petitioner bears a "very heavy burden" in his attempt to have his sentence vacated premised on an ineffective assistance of counsel.  See, Argencourt, 78 F.3d at 16; Lema v. United States, 987 F.2d at 51.  Even more so under the Strickland standard, where ineffective assistance occurs "only where, given facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." United States v. Rodríguez, 675 F.3d 48, 56 (1st Cir. 2012)(quoting Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010), which in turn quotes Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006)).

In order to successfully satisfy the first prong of the Strickland test, the petitioner must show that "in light of all the circumstances, the identified acts or omissions [allegedly made by his counsel] were outside the wide range of professionally competent assistance." Tejeda v. Dubois, 142 F.3d 18, 22 (1st Cir. 1998)(citing Strickland, 466 U.S. at 690).  Petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996) (citing Strickland at 689).

Finally, a court must review counsel's actions deferentially, and should make every effort "to eliminate the distorting effects of hindsight." <u>Argencourt</u>, 78 F.3d at 16 (<u>citing</u> <u>Strickland</u>, 466 U.S. at 689).

The second prong of the <u>Strickland</u> test, the element of prejudice, also sets the bar high. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." <u>Argencourt</u>, 78 F.3d at 16 (<u>citing</u> <u>Strickland</u>, 466 U.S. at 691). As mentioned earlier, petitioner must "prove that there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different." <u>Knight</u> v. <u>United States</u>, 37 F.3d 769, 774 (1st Cir.1994)(<u>citing</u> <u>Strickland</u>, 466 U.S. at 687).

B. <u>Application of Standard to the Record</u>

Petitioner contends his attorney's assistance was ineffective because at sentencing he did not object to the court's failure to verify that petitioner had read and discussed the PSR with counsel (Docket No. 1, 1-1, Docket No. 6). Petitioner argues that he did not see the PSR until the morning of his sentencing hearing (Docket No. 16, p. 2). In addition, he states that his attorney, when given the opportunity to object to the CHC computation by the court, failed to properly object to a "warrant" that did not exist, and which raised his CHC points from 6 to 8; thus, raising his CHC from III to IV. <u>Id.</u> The record contradicts petitioner's interpretation, and the legal implications of relevant events.

First, at the very beginning of the sentencing hearing, the court inquired whether there were objections to the PSR (Criminal No. 14-285, Docket No. 53, p. 3) . In response, counsel advanced that petitioner would be bringing up matters pertaining to his CHC. <u>Id.</u> Petitioner then addressed

the contents of the PSR with the court during this proceeding by holding a thorough discussion of

his CHC as contained within the PSR (Criminal No. 14-285, Docket No. 53, pp. 5-11).

> **THE COURT**: The calculations in the PSI are obviously correct. There's no dispute about the fact that the case involved powder cocaine, and it was at least two but less than 3.5 kilos of the substance. And that the calculations started with a base offense level of 28. Then he was -- then he was granted a three-point reduction for acceptance of responsibility. So he should be sentenced at a level 25. And a Criminal History Category of IV. That Criminal History Category, with the level 25, brings about a Guideline Imprisonment Range of 84 to 105 months, with a fine range starting at 10,000 to five million, plus supervision of at least four years. Mr. Cyril, correct?

> **THE DEFENDANT**: Yes, sir (Criminal No. 14-285, Docket No. 53, pp. 5-11).

Second, petitioner provided details surrounding an assault and reckless endangerment

charge and discussed his understanding of the warrants out for his arrest (Criminal No. 14-285,

Docket no. 53, pp. 5-7).

> **THE DEFENDANT**: Actually, you know, the case of the assault and reckless endangerment –

> **THE COURT**: Let me find it. Okay.

> **THE DEFENDANT**: Yes. That I've made a few police reports that Calicasan (ph), that he threatened to kill me. He shot me 13 times, left me on the floor for dead. He was assaulted, because he approached me April 14 at a shopping center. And I opened fire, but not to hurt anyone, just so that I can escape harm. So I took a plea on that case, and that's how that conviction came about.

> **THE COURT**: Right, but you were -- you had a gun, and you were not authorized to have a gun?

> **THE DEFENDANT**: Yes, sir. Yes, sir.

> **THE COURT**: Okay. Very well. Anything else?

> **THE DEFENDANT**: They said I have an active warrant in Orlando County, which I have –

> **THE COURT**: Let me find that one. Yes.

**THE DEFENDANT**: Which I've been arrested -- I think they said the warrant was 2007. I've been arrested in 2011 and been released and cleared. No warrants came up. I had no knowledge that that warrant was active.

**MR. HERNANDEZ**: After that we explain –

**THE COURT**: It's active on paper, but obviously there has been no disposition on it, correct?

**MR. HERNANDEZ**: There is a warrant.

**THE COURT**: There's a warrant, period.

**MR. HERNANDEZ**: For the record, there is a warrant.

**THE COURT**: Okay. What else?

**MR. HERNANDEZ**: And we understand that the probation officer, as we discussed that with her, she was able to corroborate that. And that's why we did not oppose as we have no evidence to oppose that.

**THE COURT**: Very well. Anything else, sir?

(Criminal No. 14-285, Docket No. 53, pp. 6,7).

At no time during the sentencing hearing did petitioner give any indication that he had not sufficiently reviewed the PSR with his attorney, nor raised any concern about his CHC of IV. Quite the contrary, he demonstrated detailed knowledge of the content of the PSR and expressed no objections to it. Furthermore, he specifically acknowledged that there was a warrant for his arrest and did so in an intelligent and voluntary manner, with full knowledge of the consequences it entailed. It follows, therefore, that petitioner does not satisfy the Strickland test and by extension, cannot prevail on a claim for ineffective assistance of counsel.

### IV.    CONCLUSION

For the reasons stated, petitioner's motion to vacate, set aside, or correct sentence as supplemented (Docket Nos. 1 and 6) is DENIED and the case DISMISSED WITH PREJUDICE. Judgment shall be entered accordingly.

### V. CERTIFICATE OF APPEALABILITY ("COA")

Rule 11 of the Rules Governing Section 2255 Proceedings provides that a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  To merit a COA, an applicant must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2254 (c)(2).  The applicant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Because the petition here does not satisfy this standard, the court will not issue a COA.

**SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September 2019.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNADEZ
United States District Judge